Case number 13-5933, Megan Gilley v. Marcia Dunaway, et al. Arguments not to exceed 15 minutes per side. The appellees will share time with Mr. Chenoweth, 10 minutes, Ms. Stewart, 5 minutes. And Mr. Miller, for the appellant, you may proceed. Thank you. May it please the court, counsel, on behalf of Megan, I'd like to thank you all very much for hearing me today. And I have retained three minutes of rebuttal time, if that's OK. This is a very unusual case. I've practiced in this area quite a bit. If you've read the cases that are cited by the court and the parties, I've been a participant in many of those cases. In this case, the judge dismissed, the district court dismissed Megan's complaint of 1983 Title 9 and other claims based on the statute of limitation and rejected, finding it implausible that the statute of limitations could have been told. What is clear is Kentucky law controls statute of limitation tolling. I don't think there's any question about that. What is further clear is it's been the law in Kentucky since at least the Sector case that evidence of a duty to report and a failure to do so may constitute concealment sufficient to toll the statute of limitations. That's the law in Kentucky. We've alleged that the superintendent and assistant superintendent had knowledge that Megan was currently being sexually abused by her coach. But instead of making the required report, they undertook, alleged in the complaint, to retaliate against the girl who made it. Actually, she didn't make a complaint. They came to her. They pulled her out of class. A librarian and the assistant superintendent done away and said, we've heard these rumors. Is there a sexual relationship going on? And the young lady, Ms. Cole, said, yes, there is. She had never told anybody prior. Obviously, these are kids we're talking about. She told them the basis of her knowledge, the fact that she had seen them kissing, the fact that she had seen sexually explicit text messages, and the fact that, as girls and children sometimes do, she had listened in on phone conversations where sex was discussed between this coach and this teacher. Based upon your theory, does that mean that there's a forever tolling of the statute of limitations? No, sir. Until they report it? OK, if they report it, then that ends the tolling. It stops it. But if they don't, after this incident that you're talking about, then there is no statute of limitations, right? I don't think so, Your Honor. It's a good point to raise. And that was a point that's been raised in many cases. I personally think that should be the case. But in this particular case. What's the law say? I don't think there is. I think that the law really doesn't say anything on that issue in these sexual abuse of minor cases. That's the way your theory would go, because it's an open-ended. Right. My theory in this case, I want to be clear, is my theory, once Megan Gilley found out about Cole affidavit. And I can walk you all through how this happened, if you're interested. But essentially, there was another student who the parents were concerned, one of whom was a Kentucky State trooper, was concerned that this coach, this is after Megan Gilley's situation, was concerned that this coach was sending her text message after text message. And they were very concerned about their daughter. And they hired me to investigate. During my investigation, we uncovered Ms. Cole. I'm sorry. This is not in the record. But that's why I ask if you might be interested. My point is that once Megan found out about Ms. Cole's affidavit, and the fact that she told them about this, and there was no report made, that would trigger, in my opinion, the statute of limitations. In this particular case, I don't know the exact dates, but it is in the brief of when the affidavit was signed and when Ms. Gilley filed her complaint. And it was less than a year between the two. So to answer your question, in this particular case, I believe an argument can be made that once Ms. Gilley found out that this other student had told them, and they failed to make the report, the statute runs. The district court, in my opinion, made several errors. One of the biggest errors, I believe, he made because he then relied upon it to say that she knew everything she needed to know at the time was the fact that Megan was questioned during this investigation by the school. That's not alleged in our complaint. It is alleged in the Vincent letter attached to the complaint. In other words, Vincent writes back to them and says, hey, you all talked about this to me back in 06, 05, something like that. You questioned me, you questioned Megan. We don't allege that Megan was questioned. In fact, if this case is allowed to proceed, she will testify that she was not questioned. But when we look at the cases that are similar to this case, I believe that the Manor case that emanated out of the Court of Appeals and the circuit court is the most apropos, when you look at just the facts of the case. In the Manor case, Ms. Manor was questioned by the school when the sexual abuse was happening, and she protected the teachers. And the Court of Appeals found that's not enough to say that she loses the tolling argument. Is that a presidential case? It is in terms of this court. It's a non-published opinion in the state court. Certainly in this court, we can. It's not binding upon Kentucky, though. Well, it is if there's nothing else. And Kentucky doesn't recognize it as binding, right? Well, it's persuasive, but not binding. Right. I believe the status of the law, and that is unpublished opinions are not binding the precedential, particularly when there's no other law that is published. And certainly the Manor case is, we're talking about what is the Kentucky law, and that's the closest. But another case that's very close, and another case I'm confused with the district court about, is the district court relied on the Turner case, which is a Supreme Court case, that involved two five-year-olds, and whether there's a duty to report that behavior under 620-030, KRS 620-030. And the court found in that case, no, there's not. And the reasoning is in there. But in that case, it talks about the fact we're not dealing with a situation like Commonwealth v. Allen, where it was a teacher abusing a child. So the case relied upon by the district court saying there's no duty here, expressly says there is such a duty, and a teacher, or in our case, a coach. This Mr. Vincent was her track coach and assistant basketball coach. He was also, in a prior experience, I think an elementary school teacher and counselor, hers as well. The Allen case, this is something I caught in the brief filed by Mr. Jackson. They say we don't know where the source of the information came from in Commonwealth v. Allen. You'll see that in their brief. In fact, the fourth or third sentence of the case says that the reports came to the teachers from students. The exact same situation we have here. Students told these teachers that this other teacher was sexually abusing a student or more than one student. And these teachers only reported, I'm sorry. Let me ask you this. You're only arguing concealment, as I understand. At least that's the impression from your brief. So that if what occurred was that the investigation that these defendants performed was negligent or something like that, your allegations wouldn't address that, because you're really just arguing concealment here. Is that it? Well, that's why the claims were dismissed, was based upon the fact that the district court didn't feel the statute of limitation was told. Again, this was a motion to dismiss. Now, in relation to the investigation. Did you say the district court was wrong because there was concealment and there was evidence of that? Yes, sir. And you're limiting your argument to that concealment argument? Well, in the briefs, today I am. In the briefs, there are arguments made about how the school board is an arm of the state and therefore 1983 doesn't apply. I give you all the cases that say that's not true, grinding precedential cases. But today I wanted to talk to you about this issue, because this issue overrides everything else. If the statute of limitations was not told, Ms. Gilley's claims are stale, and she can't go forward. This other issue, whether you could sue the Tremble County Board of Education, the district court didn't rule on that. Whether they're an arm of the state or not? You know, I'm not sure that he got to that. But in my brief, I supply case after case where it says that in Kentucky, you have to use federal law to look at the issue. And case after case says school boards are not arms of the state for purposes of 1983 liability. And indeed, this court has said that itself. And then, of course, in the Doe versus Claiborne County case, which is one of the two main avenues that I'm trying to utilize to protect this girl's rights, 1983, this court set forth a policy of inaction theory and what needed to be proven. And those elements certainly include the fact that a teacher abused a student. So the claim was brought against the Claiborne County Board of Education, I believe, in that case. It was out of Tennessee, though, wasn't it? That was out of Tennessee. Yes, it was, sir. We don't have a Claiborne County in Kentucky. That's correct. Amazing as that is, with as many as we have, there's not a Claiborne County. Going back to the Turner case, I wanted to say again, it reinforces the Allen case. In the Allen case, students brought complaints to teachers. The teachers only went to the principal, did not make a report. The Kentucky Supreme Court, and I think it was 1998, so this is law when these events occur towards this poor girl, says that not only was there a mandatory duty for them to report it to the authorities under the reporting statute at the time, these teachers, and that reporting to the principal wasn't enough, but it was a crime for them not to have done so. This is the status of the law. I believe that when the Turner case does not change that in any way. In fact, if you read the Turner case, they give a quote about this is not a situation like in Commonwealth v. Allen, where it was a teacher abusing a student. In the Turner case, it was two five-year-olds. And there was a little bit of investigation. I also want to talk about this investigation a little bit. Again, we're on a motion to dismiss. But what we allege is, here's what they did in the investigation. They told the girl she was a liar and retaliated against her. That reminds me of Maynard, the person who brought the complaint, the mom. The mom went to the superintendent and said, there's something wrong going on here, inappropriate. And the superintendent said, do you think it's sexual? And the mom said, yes. My husband and I both do. In this case, the student said, there's sexual going on, and here's the basis of it. I've seen these texts. I've listened to these phone calls. I've seen them kissing. But there was a retaliation angle in that. Because in Maynard, right after the report was made by the mother, they filed a social services complaint against her, and she was removed against the home. Same thing here. They retaliated against the source of the information. It's a chilling effect for anybody else to step forward. Did they make further investigation? And did they talk to the mother of Gilly? The only thing that's alleged in the complaint is, instead of investigating, Mr. Jackson, and I believe it's in the letter from Vincent as well, that Mr. Jackson was aware of this. He didn't make the report either. And certainly, an assistant superintendent report to the superintendent does not suffice under Commonwealth reality, telling the principal. But the best we could tell is that here's what they did. They told the little girl that had the nerve to say this is going on, to shut up, she's a liar, and they retaliated against her. Then they told Vincent, go to the mom and get a letter saying she doesn't know anything about this. But what's important is there is nothing in the complaint alleged. And in fact, if we're allowed to go forward, that Megan knew that Cole came forward, that Megan knew they went to the mother, or that Megan was ever questioned during this investigation. I call it a cover up, but an investigation. But even if all those factors were present, when you read the Maynard case, they were present there too. And the court said that's still not enough to overcome the tolling of the statute of limitations. I see my time is up. I'm happy to answer any questions. Otherwise, I'll just use my rebuttal time. Good morning, your honors. May it please the court. My name's Grant Chenoweth on behalf of the Trimble County Board of Education and Marsha Dunaway. Ms. Stewart is here on behalf of former Superintendent Jackson. And we've agreed to split our time with me taking the first 10 minutes, and Ms. Stewart taking the final five. The lawsuit as filed, and certainly as the appeal was filed, also includes official capacity complaints against, or it sets out official capacity claims against both the former superintendent and the current superintendent, Ms. Dunaway. Those official capacity claims were dismissed as redundant by the district court. That hasn't been addressed on appeal. Some state law claims were dismissed based on immunity by the district court. That hasn't been appealed. So there's a few aspects of the district court's order that must be affirmed simply because no appeal was taken on those issues. You represent just the Trimble County Board? And the current superintendent, Marsha Dunaway. Oh, and Dunaway, OK. In the court's records, it shows that I represent Mr. Jackson in his official capacity and Ms. Dunaway in her official capacity, because that's the same as suing the agency. Certainly, as Mr. Miller shared with the court, this case did fairly quickly get down to the question of whether Kentucky's tolling statute on fraudulent concealment served to toll the statute of limitations on the theory not of active interference with Ms. Gilley,  a duty to speak. That has been fairly well-established as one of the methods by which fraudulent concealment could be pled and proven. Did the district court make any ruling on whether you could sue the Trimble County Board? He did not pass on that issue other than as to the immunity under the state law claims. The law on duty to speak, if we're looking at failure to speak when the law imposes a duty to speak, we have to get to the specific statutory language of where that duty is alleged to arise. That's Kentucky Revised Statute 620.030. Any person who knows or has a reasonable cause to believe that a child is dependent, abused, or neglected shall cause an oral or written report to be made. The Turner Court, Mr. Miller really wants that to be ignored. He practiced the Maynard case, and it was very successful in that case. Duty wasn't even contested in that case. The boards, the County Board of Education's designee witness simply testified that the former superintendent had a duty to report what was reported to him by the mother. I believe if Turner had been decided prior to Maynard, that analysis would be different. Because the Turner Court specifically said there is no duty under the statute to report mere suspicion, mere allegation, mere rumor. They said you only have to report whether there's knowledge or reasonable cause to believe. Of course, this young lady, Coe, was that her name? Oh, yes, sir. She says she talked to him and told him what she'd seen. Don't you think they should have reported it or at least investigated further? Well, there is no duty to investigate further. Certainly, if we were looking at a timely negligence claim, then perhaps the question of whether the investigation was sufficient would be something that would at the very least have to be addressed by the court. But since there was no duty to conduct any particular investigation, whether we think the investigation was adequate doesn't contribute to the tolling argument that's before the court. If the statutory duty is to report if there is reasonable suspicion to believe. Reasonable cause to believe. Reasonable cause to believe, sorry. How do we determine what is reasonable cause if there isn't any investigation? Simply from the context, the cases cited by both Ms. Gillian and Defendant Jackson, the Rowan County versus Sloth case, really adopt kind of that federal law standard of what the official knew based on objective determination of whether they had facts available to them from which a reasonable belief could be formed. The Turner case rejects the notion that even the victim telling somebody that they have been subjected to this conduct would create reasonable cause to believe, that it takes something more than the report itself to create reasonable cause to believe. And in the Turner case, even an investigation that was conducted, questioning that was conducted, the court said that still didn't trigger reasonable cause to believe. What would trigger that? They could just ignore it. Just somebody say, this happened, and say, well, we don't believe you. That's as far as they need to go. If we were looking solely at a timely negligent supervision complaint, I believe the answer to that is no, they could not ignore it. But if we're looking after the fact as to whether their conduct constituted fraudulent concealment, you have to look at whether they, in fact, developed reasonable cause to believe. Whether they should have is not the test. Whether they should have done more and tried to develop reasonable cause to believe is not the test under any of the case law that Ms. Gilley is relying on. Kentucky courts have not ever suggested that there's an obligation on the defendant to develop reasonable cause to believe. The Sector case, very briefly, I want to say, happened a long time later, didn't it? It did. In the Sector case, the diocese, in fact, had a volume of documentation and had expressed internally their actual belief and actual knowledge that he had victimized multiple students, transferred him out of the state. And then when he came back into the state, they still took no action, even though they exchanged communication saying, we don't feel his pedophilia has been addressed. So there's actual knowledge. And their own statements show that they believed that he had engaged in that conduct. If they had just said in the diocese that they didn't believe all this, they would have been OK. You couldn't have sued them. If there was a lower quantum of evidence within the diocese files, and if there wasn't the evidence of those prior reports, that's correct. In this case, there's no evidence of any prior victim of Mr. Vinson. There's no evidence at all of any prior allegation against Mr. Vinson. So there's nothing in their files that would equate to the Sector case. Surely, they should have talked to Gilley and asked her what was going on. They didn't do that, as far as we know, right? There, in fact, are some, based on the current record, we have to accept that. Mr. Vinson says that Gilley denied it. They could just keep somebody like this, a predator on the staff, and just say, we don't believe these stories. And nobody could sue them, unless they did it within the one-year statute of limitations. If there's only that singular allegation as to one student, that singular rumor, that doesn't rise to the level under the Turner Court. It says, mere suspicion, mere allegation doesn't rise to the level of reasonable cause to believe. You said that earlier, didn't you say that if a victim reports it, that they don't have an obligation? That's correct. Gilley had gone to them and said, look here, what's happened to me? They could have said, we don't believe you, and put it away, file it away, as they call it. That is essentially what the Turner case held, is that even where the victim came to the teacher and said, this is being done to me, that that alone does not create reasonable cause to believe. The Allen case, Commonwealth versus Allen has been relied on extensively. But what's very significant in that case is its posture as it was on appeal. It was on appeal from the dismissal of the indictment on the argument that the defendants had discharged their duty. Duty was presumed. They were asking the court to dismiss the indictment on the argument of discharge. So all the court analyzed, the only part of the statute that was specifically analyzed by the Supreme Court in Allen was whether the discharge provision and the good faith immunity provision applied, not whether the duty had, in fact, arisen under the facts. That's why we have very sparse record of what came to them, what level of information came to them, before they reported to their principal. We don't know if under the Turner case, they, in fact, had a duty to report anything. Maynard case decisive for us, or is it just? Turner is more recent, and Turner did not rely on Maynard's notion. Of course, Maynard was unpublished, but Turner is more recent, and it's the Supreme Court. They did not rely on Maynard's notion that a report from a mom that she suspected that something was going on with her daughter would have triggered a duty on a superintendent to report to law enforcement. The court in Turner specifically said, even if the victim reports to the teacher that this conduct is happening to them, that doesn't trigger a duty to report. I believe if Turner had been decided first, the sentence in Maynard that says Superintendent Guy Potts had a duty to report the mother's suspicion to law enforcement could not have been written, because the Turner court said there is no duty to report mere suspicion. Of course, Turner involves real young kids, and one kid against another. It does, but it's the identical statutory language as to what constitutes abuse and what constitutes reasonable cause to believe. The underlying facts don't. But here, we're not, as I understand this case at least, we're not just looking at what was the duty and was it ignored, we're looking at the question of, did anything happen here to conceal what did go on so that we can figure out whether this is time barred? And you haven't really talked about that. Yes, Your Honor, I've never gotten off the first page of my notes based on your question. So we have not gotten down to. Well, I'd be grateful if you would, because I'm trying to figure out. I think the duty is one thing, but the question of whether there was concealment of a failure even to do what they were required to do is a separate and threshold question here. Our argument is simply that the scant information came to them never created a duty. There was nothing to be concealed. If the duty's never triggered, there is not a failure to speak. And that's the whole, that's part and parcel, that's everything of their tolling argument. There simply is no other evidence of any notion by Superintendent Dunaway, by former Superintendent Jackson, of active concealment of the fact this rumor had come to them and they made an inquiry into it. There's nothing in the Anderson case, for example, which is an unpublished US District Court case out of Kentucky. It said there had not been any prior complaints. There were no records on this that could have been destroyed. So there's no allegation of affirmative steps to conceal information known to the agency. And that's part of the reason the court in Anderson said that while a failure to report may be evidence of concealment, there has to be more. There has to be some additional affirmative steps made to hide the plaintiff's cause of action from the plaintiff. We do certainly argue, have preserved in the briefs very extensively, the definition of abused or neglected child did not apply to Miss Gilley in this matter. She was not subjected to this conduct by a parent, a guardian, or anybody exercising custodial control or supervision over her. And it was not a situation where the risk of abuse was created by her parent, guardian, or person exercising custodial control. The affidavit says she drove to his house. It doesn't say that he absconded from school with her. It doesn't say he took her home after practice or in-game. She went to his house. So there's no allegation that Mr. Vincent was exercising custodial control or supervision over Miss Gilley. Sexual abuse, as defined in the statute, would not have applied to her after she reached her 16th birthday. And the only evidence that's even subject to being derived from the call affidavit is that that alleged conversation with Miss Dunaway happened after Megan's 16th birthday. Kentucky has the age of consent of 16. And at the time, a relationship between a 16-year-old and an adult would not have been unlawful. Certainly, you're saying that the teacher-student relationship problem, once she became 16, that because there's no custodial situation here, there simply isn't any abuse situation. That's correct, Your Honor, as of until the law was changed in 2006, after this all happened, irrelevant change in the law. That's when the person in a position of special trust or authority provisions were added to the statute. Prior to 2006, there was no definitional language in Kentucky's penal code or the child abuse statute that would have related to somebody who merely met the victim as a result of being a teacher. All right. Thank you. May it please the court, counsel. My name is Mary Ann Stewart. I represent Superintendent Gary Jackson, who was the superintendent of Trimble County at the time that this incident occurred. Our position, our brief, is very similar to that filed by Mr. Chenoweth, although I would point out some additional facts that the district court pointed out. And first of all, this is on a motion to dismiss. The court's review of the case is limited to the record, what's in the record, as was the district court's review. The district court review on a motion to dismiss reviews the pleadings, the exhibits appended to it to determine from that, and the district court must draw the reasonable inferences, giving the benefit of the doubt to the plaintiff, giving the strongest reading to the plaintiff. Has the plaintiff brought forth, has the plaintiff deduced sufficient facts, not conclusions, not speculation, not conjecture, sufficient facts to toll the statute of limitations? And Judge Batchelder, I think, raised an excellent point on the act of concealment, because that is the key to the tolling of the statute of limitations in this case, and that is where the district court did not go. And in fact, the district court's opinion, when you read it, it is well-written. It follows the same logic, rationale, of the Sixth Circuit Court of Appeals decision, 2012, in the Guy versus Lexington-Fayette County Urban Government. I always say that wrong, but basically in the Guy case. It also follows the same rationale, the same analysis of the Kentucky case laws, since Maynard, as Mr. Chenoweth stated, and Anderson. There are basically two components that the court will look at. One is, did the plaintiff show sufficient facts to show active, affirmative concealment? Concealment cannot be presumed. It cannot be speculated or based on conjecture. It has to be, there has to be active, affirmative evidence of that. And here's what the district court had. The district court had the Laura Call affidavit. And the district court's opinion noted, very correctly, the Call affidavit has nothing to do with Superintendent Jackson. She mentions, she does not mention him anywhere in that affidavit. Nothing in that affidavit, although the plaintiff wants to use that affidavit to impute knowledge, and quote, and calls it actual knowledge, to Superintendent Jackson, he can't do that under Kentucky law. Kentucky law does not allow him to impute that knowledge. So then, the only other factual basis that was appended to the amended complaint was the letter from Mr. Vincent that was written to Marcia Dunaway. And in that letter, Mr. Vincent reports that he was questioned about a relationship with Megan Gilley. He doesn't reference the Call affidavit, but that he was questioned about a relationship with Ms. Gilley in a meeting in which Jackson was there, that Vincent denied that rumor, and he calls it a rumor, that he states then that Megan Gilley also denied that rumor. So that all that Jackson had, based upon that Vincent letter, and all that's been adduced, is knowledge of an unconfirmed, unsubstantiated rumor. And as Mr. Chenoweth has said, in the Turner case, that does not trigger a legal duty to report. So then the question is, is there active concealment? Does it conceal it, because otherwise the superintendent would just say, well, I don't believe any of this stuff, and stuff it in the drawer. And that goes back to the Turner case, because the Turner case explains that when confronted with these types of reports, these types of rumors, that a teacher must make a reasonable inquiry into the facts, weigh the credibility of the student, and use her judgment and experience as a teacher to reach a decision as to whether or not there's reasonable cause to believe sexual abuse had occurred. In fact, the Turner case, the Turner court, equates that to, it says, quote, it's similar to a judicial decision as to whether or not there's probable cause to support an assertive proposition. Because the reality is, if schools, if teachers, if superintendents were reporting to law enforcement or the cabinet, any rumor that comes about, which is what the appellant contends is the duty, that is going to tie up significantly the time of law enforcement and the cabinet. It ties up significantly the time of administrators in the district. Suddenly, we're not running our districts, we're running down rumors. That's not what the statute requires. They have a lot of things to report, didn't they? And that's not what the statute requires or envisions. So if there's no legal duty, then the question is, was there active concealment? And I see my time's running out, but the third component that's just as important is, did the plaintiff exercise reasonable diligence in discovering her cause of action and in taking steps to discover her cause of action and in filing it in a timely action? Here, there's no vermin what she did, other than she sat for seven years and let the statute of limitations run. And I do want to quote back to the Anderson case, and I will conclude. But in Anderson, the Court of Appeals was faced with a very similar situation. And the Anderson case held that the plaintiff did not satisfy her duty of due diligence and stated that even if there had been a violation of KRS 620-030, that alone, even if there was mandatory reporting and they didn't report, they said, if we even conceded that, that alone does not trigger equitable tolling under Kentucky law. Because the plaintiff has the burden of showing they exercised due diligence in investigating and bringing their claim. And then the court stated, quote, given the very nature of the injuries alleged by the plaintiffs, plaintiffs were sufficiently aware of the facts that should have aroused suspicion of the claims against the defendants. And they're talking about a superintendent here at the time of their injuries. In so far as plaintiffs were injured while attending Fayette County public schools, the onus was placed on them to, quote, exercise reasonable care and diligence to discover whether there was a viable claim arising from those injuries. And that is the same analysis that Judge Reeves engaged in. It is the correct analysis under Kentucky law. It is the correct analysis under Sixth Circuit law as well. Thank you, counsel. I had a few issues. You raised a question, Your Honor, about the concealment. And I forgot to get to that. But it's kind of critical. Yes, it is. It is. And we need to be clear. Megan Gilley's claim is not, I was sexually abused by Mr. Benson. Her claim is that they didn't report and they violated the statute. That is not a claim. That's an issue of law as to whether the statute limitations are told. Her claims, as I mentioned earlier, are 1983 and Title IX, both of which require her to prove under 1983 either actual or constructive knowledge or Title IX, actual knowledge. And then both claims require her to prove deliberate indifference thereto of the sexual abuse. She knew she was sexually abused. Actually, in a victim's mentality, they don't realize it's abuse until years later. But we won't get into that here. But her claims are that they knew about it and they were deliberately indifferent to it. You're saying that she didn't discover it until she found out about the code. That's correct. And there is no, was Megan Gilley supposed to ask every single participant in school while she was there, hey, did you know about me and Mr. Benson, and were you ever questioned by the school about that? Is that the due diligence the court requires? There's certainly no case law on that issue. But I wanted to make clear, the claim is not simply, I was sexually abused by Mr. Benson when I was at school. The claim is the school, through its superintendent and its assistant superintendent, knew about it and were deliberately indifferent to it. That's the claims that were concealed from her by their failure to report. I'm sorry, Judge. She could have sued Benson, but he probably has kind of an empty pocket. But she couldn't have sued the superintendent or the school board or any of the rest of these people unless she could show that they knew about it and concealed it. Or were deliberately indifferent to it. Yes, and that's where the concealment comes in. Those claims were concealed from her by their duty to report and failure to do so. So the concealment is, by not reporting it, they concealed from her that they knew about it. Correct. They knew about it, and they were deliberately indifferent to it. And part of deliberate indifference, at least what I argue to a jury, is certainly, you were supposed to make the report and you didn't. I do want to move on a couple things. I see my time is running slow. This issue about it's not sexual abuse if you're over 16. The statutory language under the Juvenile Code, and we talk about this in our brief, says a neglected or abused child is anyone under 18. Certainly, teachers aren't allowed to have sex with the students under Kentucky law. Under these very laws we're talking about, 1983, Title IX. He's going to the penal code. The definitional section for 620.030, I write about it in my brief. I wanted to mention that. And the idea of custodian, the custodial relationship, I think you had asked a question about that. In Williams versus the Kentucky Department of Education, Kentucky Supreme Court case 2003, before these events, or while these events, I think she started to be abused when she was 14. I think that might have been 2003. Quote, the basic premise for this duty is that a child is compelled to attend school so that the protected custody of teachers is mandatorily substituted for that of the parent. That issue is decided already. So I wanted to get to that. And I think that's all. Once again, thank you all very much for your time. I know I went over my time. I really appreciate it, and so does Megan. Thank you, counsel. The case will be submitted. There being no further cases.